UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.06-20786-Civ-HUCK
         (03-20129-Cr-HUCK)
MAGISTRATE JUDGE P. A. WHITE

NEVIA ABRAHAM,                    :

    Movant,                      :

v.                               :    **REPORT OF MAGISTRATE JUDGE**
                                      **FOLLOWING EVIDENTIARY HEARING**

UNITED STATES OF AMERICA,         :

    Respondent.                  :
_____

## I. Introduction

Nevia Kevin Abraham has filed a pro se motion to vacate pursuant to 28 U.S.C. §2255, attacking his convictions and mandatory life sentence for conspiracy to kidnap a postal employee, kidnapping a postal employee, assault on a postal employee, two counts of carrying a firearm in relation to a crime of violence, and possession of a firearm by a convicted felon entered August 7, 2003, following a jury trial in Case No.03-20129-Cr-HUCK.

This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in the United States District Courts.

For its consideration of this motion, the Court has the response of the government to an order to show cause with exhibits, the Presentence Investigation Report (PSI), the underlying criminal file, a supplemental memorandum of law filed by appointed counsel,

as well as testimony and exhibits from the February 8, 2007
evidentiary hearing.

## II. <u>Claims Presented</u>

Abraham raises the following claims:

1. His conviction was obtained by a violation of
   the protection against double jeopardy, and
   counsel was ineffective for failing to bring
   this to the Court's attention.

2. Counsel was ineffective for failing to
   research the controlling law under §3559 and
   924(c).

3. He is actually innocent of the sentence.

4. He received ineffective assistance of
   appellate counsel.

## III. <u>Factual and Procedural History</u>

The charges against Abraham stemmed from the events of January
31, 2003, when he took a postal employee hostage in order to gain
entry into his girlfriend's house. He had gotten the help of a co-
defendant, who drove him to the postal truck, and planned on making
the postal employee knock on his girlfriend's house and pretend to
deliver a package, so that he could enter when she opened the door.
However, the police had received a call about an unidentified male
jumping into a mail truck, and subsequently saw the codefendant
jump out. They apprehended him, and he ultimately confessed to the
plan. The police followed the mail truck, which still had the
movant and the mail carrier inside, and after shots were fired from
the truck, were able to effectuate a stop. The movant then took the
postal employee to the back of the truck with him, where he kept

her for at least an hour before releasing her and surrendering. After waiving his <u>Miranda</u>[1] rights, Abraham provided a confession, and the police recovered two firearms from the mail truck.

He proceeded to trial, where his defense was that he felt compelled to break into his girlfriend's house in order to remove his children from his girlfriends because he was concerned by an alleged threat to their safety.  Abraham was convicted as charged, and on August 5, 2003, he was sentenced to life imprisonment. During the sentencing hearing, counsel objected to the mandatory life imprisonment due to §3559(c), the federal three strikes act, arguing that the escape conviction was not a serious violent felony, as defined by §3559(c)(2)(F)(ii).  The Court found that §3559(c) did apply because the escape conviction qualified as a serious violent felony, and stated that it had no choice but to sentence him to life imprisonment.

Abraham prosecuted a direct appeal, arguing: (1) the court abused its discretion by denying his request for additional peremptory strikes during jury selection; (2) the court abused its discretion by admitting evidence of his prior bad acts under <u>Fed.R.Crim.P.</u> 404(b); (3) the court erred by not granting his motion for a mistrial following testimony attributing racist statements to him; (4) the prosecutor committed misconduct by misrepresenting the defendant's excuse and making inflammatory and prejudicial comments about the defendant to the jury; (5) the court erred by admitting into evidence the recording of a 911 call under the excited utterance exception to the hearsay rule; (6) his sentence was imposed in violation of the Ex Post Facto Clause; and (7) the court erred by denying him a reduction for acceptance of

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

3

responsibility, and by enhancing his sentence because the victim was a government employee.

On September 30, 2004, the Court of Appeals affirmed the judgment, holding specifically that escape qualifies as a "serious violent felony," employing the reasoning found in <u>United States v. Gay</u>, 251 F.3d 950, 952 (11 Cir. 2001), that the conduct of escaping presents a serious potential risk of physical injury to another. <u>United States v. Abraham</u>, 386 F.3d 1033 (11th Cir. 2004). His petition for writ of certiorari was denied on October 11, 2005. This timely motion to vacate pursuant to §2255 ensued.

IV. <u>Discussion</u>

A. <u>Evidentiary Hearing Claim</u>

In his second claim, the subject of the evidentiary hearing, the movant asserts that counsel was ineffective for failing to research the controlling law under §3559 and make the correct legal argument that the escape conviction should not be counted as one of the strikes against him. He argues but for counsel's deficient performance, he would not have received a mandatory life sentence.

To establish ineffective assistance of counsel, the movant must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>,

4

811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

In this case, as stated, the movant asserts that counsel was ineffective for failing to make the proper objection under the federal three strikes law. The federal "three strikes" law under which the movant was sentenced mandates a sentence of life imprisonment for a defendant who has been convicted of a "serious violent felony" if he previously was convicted of "one or more serious violent felonies and one or more serious drug offenses." 18 U.S.C. §3559(c)(1). In this case, Abraham's enhanced sentence was based on two prior convictions: (1) trafficking in cocaine, as the serious drug offense; and (2) escape, as the serious violent felony.

It is undisputed that the movant's trafficking conviction is a serious drug offense, and therefore constitutes one valid

qualifying conviction. However, it is the status of the serious violent felony, the prior escape conviction which is at issue.

**Title 18 U.S.C. §3559(c)(2)(F)** defines a "serious violent felony" as:

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder; manslaughter other than involuntary manslaughter; assault with intent to commit murder; assault with intent to commit rape; aggravated sexual abuse and sexual abuse; abusive sexual contact; kidnapping; aircraft piracy; robbery; carjacking; extortion; arson; firearms use; firearms possession; or attempt, conspiracy, or solicitation to commit any of the above offenses; and

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense;

The government argued that the escape conviction qualified as a prior serious violent felony conviction under §3559(c)(2)(F)(ii), because it was an "offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense."

Counsel objected, and during the sentencing hearing, argued that the prior escape conviction did not constitute a serious violent felony under §3559(c)(F)(ii) because the movant's actions of merely walking away from a work detail were done without actual

6

violence or the threat of violence.  The District Court overruled
his objection, finding that §3559(c) did apply because the escape
conviction qualified as a serious violent felony:

> ...I believe the facts of this case do warrant a
> finding that 18 U.S.C. §3559(C) does apply, which
> requires a mandatory life sentence.
>
> But I am going to put on the record I believe its
> mandated because of the two predicate convictions
> that qualify under that section, a serious crime of
> violence and a serious drug offense.
>
> I don't believe the Court has the discretion once
> the facts are established, as they have been in
> this case as to the nature of the predicate
> criminal history or crimes, that I have the
> discretion to do anything other than follow the
> mandate of the statute which is mandatory life
> imprisonment.
>
> If it turns out that I am wrong in that regard its
> on the record, you or your successor counsel can
> point that out to the Eleventh Circuit and if they
> determine they do not constitute the predicate
> action I will be glad to come back and look at it
> anew. (CR/DE# 124 at 16).

In affirming the conviction and sentence, the Court of Appeals
held that the escape conviction did qualify as a crime of violence
under §3559(c)(2)(F)(ii). As stated previously in this resport, it
based its decision on United States v. Gay, 251 F.3d 950, 952 (11
Cir. 2001), which held that, because "the offense of escape
presents the potential risk of violence, even when it involves a
'walk-away' from unsecured correctional facilities," escape
constitutes a crime of violence under the career offender
guideline[2]. By analogy, the Eleventh Circuit held that an escape

---

[2]  It should be noted that under the career offender guideline provision,
the inquiry ends there, whereas under section 3559(c)(3)(A), unlike the career
(continued...)

conviction was therefore also a qualifying conviction under §3559(C)(2)(F)(ii) of the Federal Three Strikes Act, reasoning as follows:

> Abraham concedes that escape is a second-degree felony punishable by fifteen years of imprisonment under Florida law. This Court has not specifically determined whether escape meets the remaining criteria set forth in this definition. In <u>Gay</u>, however, we held that a prior escape conviction constitutes a "crime of violence" under the career offender provisions of the Sentencing Guidelines even where the defendant's escape involves merely walking away from a non-secure facility. Section 4B1.2(a)(ii) of the Sentencing Guidelines defines a "crime of violence" to include any offense that "involves conduct that presents a serious potential risk of physical injury to another." In <u>Gay</u>, we noted that "a district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." <u>Gay</u>, 251 F.3d at 955 (internal citation and quotation marks omitted). Because the offense of escape does not involve such ambiguities "and does present the potential risk of violence, even when it involves a 'walk-away' from unsecured correctional facilities," we concluded that the escape conviction in <u>Gay</u> constituted a "crime of violence" under the career offender guideline. Id.

> There is no meaningful distinction between the language of the career offender guideline-which refers to conduct that "presents a serious potential risk of physical injury to another"-and the language of § 3559-which refers to conduct that "involves a substantial risk that physical force against the person of another may be used." Under the reasoning of <u>Gay</u> and the language of §3559, accordingly, we find that Abraham's prior escape conviction qualifies as a "serious violent felony."

---

[2](...continued)
offender guidelines, permits a defendant to argue that his specific prior conviction for an offense which otherwise would be a qualifying prior offense should be considered a "non-qualifying felony".

In this proceeding, the movant concedes that the offense of escape does qualify as a serious violent felony under §3559(C)(2)(F)(ii), and recognizes that counsel objected on that basis. His argument here, however, is that counsel was ineffective for failing to take the argument a step further, and argue, both before the District Court or on appeal, that the escape conviction was a nonqualifying offense under the affirmative defense provision of the federal three strikes law, §3559(C)(3)(A)(i) and (ii).

Section §3559(c)(3)(A) constitutes a disqualification provision, or an affirmative defense, that provides a defendant with the opportunity to prove that an otherwise qualifying conviction - either robbery, arson, an attempt, conspiracy, or solicitation to commit robbery or arson, **OR an offense described in paragraph (2)(F)(ii)** - does not constitute a "strike" under the statute.  That disqualification provision states:

Nonqualifying felonies.-

(A) Robbery in certain cases.-Robbery, an attempt, conspiracy, or solicitation to commit robbery; **or an offense described in paragraph (2)(F)(ii)** <u>shall not</u> serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that-

(i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and

(ii) the offense did not result in death or serious bodily injury ··· to any person.

Courts have consistently held that affirmative defense provision of §3559(c) affords the defendant a way to challenge the

status of a prior conviction that is a serious violent felony, and would otherwise constitute a strike, requiring him to prove by the heightened standard of clear and convincing evidence that his prior convictions were nonqualifying felonies. United States v. Bradshaw, 281 F.3d 278 (1 Cir. 2002), cert. denied, 537 U.S. 1049 (2002); United States v. Brown, 276 F.3d 930 (7 Cir. 2002); United States v. Gray, 260 F.3d 1267 (11 Cir. 2001)(the three strikes statute contains a disqualification provision, or an affirmative defense, that provides a defendant with the opportunity to prove that an otherwise qualifying conviction does not constitute a "strike" under the statute); United States v. Kaluna, 192 F.3d 1188, 1193-94 (9 Cir. 1999)(stating that if a defendant asserts that a prior offense is a "nonqualifying felony" under §3559(c)(3)(A), the burden shifts to the defendant to prove this affirmative defense by clear and convincing evidence); United States v. Romero, 122 F.3d 1334, 1342 (10 Cir. 1997)(even if a crime meets the definition of a serious violent felony, the crime does not necessarily constitute a "strike" against the defendant if the defendant establishes, by clear and convincing evidence, that: (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and (ii) the offense did not result in death or serious bodily injury to any person).

The movant argues that his prior conviction for escape, which arose after he walked away from an unsupervised work detail, may well have been a serious violent felony under §3559(c)(2)(F)(ii), but was a non-qualifying felony under §3559(c)(3)(A). He asserts that counsel was ineffective for failing to make the full, complete, and correct argument under the statute.

Initially, in its written response, the government argued that, although the plain language of the statute appears to indicate that convictions other than robbery or arson which qualify as a violent felony pursuant to §3559(C)(2)(F)(ii) can be challenged under the affirmative defense provision, §3559(c)(3)(A)(I), it was not clear whether defendants may actually challenge prior convictions other than robbery or arson because it was able to locate only one case which dealt with the application of §3559(c)(3)(A)(I) to a conviction other than robbery or arson.

The court is not persuaded by that argument. The statute clearly states that prior convictions which would otherwise qualify as serious violent felonies under §3559(C)(2)(F)(ii) can be challenged under §3559(c)(3)(A)(I). Although the majority of the opinions deal with cases in which robbery is the challenged prior conviction, neither the statute nor the opinions limit the analysis to that offense. Moreover, it should be noted that during the hearing, the government abandoned this argument, conceding that it was "absolutely" possible that a prior escape conviction can fall into the non-qualifying category.

Accepting the premise that a prior escape, while a serious violent felony, may be a nonqualifying offense under §3559(c)(3)(A)(I), the issue remains whether counsel was ineffective for failing to make that argument. Thus, it must be determined whether counsel's failure to make the argument was deficient, and whether, if so, the movant was prejudiced.

(1) <u>Performance</u>

The movant argues that counsel should have read the entire statute and realized that the affirmative defense provision applied

to his case, and made that argument at sentencing. This Court agrees. Under the facts of this case, this court finds that counsel's failure to apply the disqualification provision to his argument at sentencing was unreasonable, and constitutes deficient performance.

The government, while conceding that the offense of escape can constitute a non-qualifying felony under §3559(c)(3)(A)(I), argues that counsel was nonetheless not deficient for failing to make that argument. The government contends that counsel made the same argument that was made at the hearing, but merely omitted citing to the to the affirmative defense provision of the statute. In support of this position, the government notes that appellate counsel also neglected to cite to that section of the statute, as did the probation officer, the government, and the Court. In essence, the government argues that because no other party alerted the Court to the affirmative defense section of the statute, §3559(c)(3)(A)(I), counsel cannot be deemed ineffective for having failed to do so.

The Court is not persuaded by this argument. Counsel had a duty to investigate all relevant defenses both to the charges against his client, and as to the sentencing provisions[3]. The affirmative defense provision contained in §3559(c)(3)(A)(I) is not an obscure note found at the end of the statute, nor is it a judicially created exception that would have been unreasonable to expect counsel to find. As argued by counsel for the movant during the hearing, trial counsel failed to simply turn the page of the statute and continue the analysis under §3559. Countless courts,

---

[3] This duty is not shared by the probation department or the Assistant United States Attorney's Office. Moreover, appellate counsel failure to raise the argument does not justify trial counsel's failure to have done so, as: (a) the claim would not have been preserved; and (b) appellate counsel's failure to make this argument was raised by the movant as a separate claim of ineffective assistance of counsel.

including the Eleventh Circuit have recognized that the plain language of the statute means what it says; that the affirmative defense contained therein provides a defendant with the opportunity to prove that an otherwise qualifying conviction does not constitute a strike under the statute.

The analysis, as explained in <u>United States v. Romero</u>, 122 F.3d 1334, 1343 (10 Cir. 1997), is not complex:

> In determining whether a conviction constitutes a serious violent felony under section 3559(c), the statute indicates that we follow a two-step process. First, we must examine the statute itself to determine whether the offense contains as an "element the use, attempted use, or threatened use of physical force against the person" or whether the offense "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." If either of these tests are met, the burden shifts to the defendant to avoid a "strike" by establishing, under the clear and convincing evidence standard, that his conviction is a nonqualifying offense. As such, the defendant must place evidence in the record to establish that "no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense" and "the offense did not result in death or serious bodily injury." 18 U.S.C. § 3559(c)(3)(A).

While counsel certainly made a colorable argument that escape should not qualify as a serious violent felony under §3559(c)(2)(F)(ii), he should have continued the analysis and availed himself of the affirmative defense provision of the statute and made a stronger, and more persuasive argument that even if the crime of escape does constitute a serious violent felony because of the nature of the offense, this particular conviction for escape should not have counted as a strike because in this case, no weapon

13

or gun was used or threatened to be used, and no injuries or death resulted. His failure to make the second step of the analysis, in this Court's estimation, amounted to deficient performance.

### (2) Prejudice

Having established that counsel should have made the argument propounded by the movant, Abraham still must establish that he was prejudiced by counsel's failure to do so.

### (a) Whether the movant's escape is a nonqualifying offense

The movant contends that the circumstances of his escape charge involved his absconding from a work release program in John Pennecamp State Park in Monroe County, where he was left unsupervised with the exception of park rangers. During the evidentiary hearing, the movant testified that he was first assigned to picking up trash along the highway, and was then moved to Pennecamp State Park. For that detail, the rangers would pick him and a couple other inmates up in a van, drive them to the park, and assign them specific duties. While at the park, there were no guards, no supervision, and he was not in any restraints. He recalled that his job was to paint the benches, so he picked up the paint and brushes, and then went out on his own to paint all of the benches in the park.

He testified that on July 7, 1989, his girlfriend and his cousin visited him at the park, and he left with them in the back seat of their car and did not return. He stated that there were no guards on the way out, and he just ducked down in the back seat to avoid being seen by anyone. According to the movant, there were no

14

guns or weapons involved, and no resulting injuries. Several months after his escape, he called one of the case managers, Ms. Slaughter, and arranged to meet her at Cutler Ridge Mall to turn himself in. When he arrived at the mall to meet her, several officers from Metro Dade and from the Department of Corrections jumped out and told him to get on the ground. He did so, put his hands behind his back, was returned to custody, and eventually received a 20 month sentence for the escape charge. He testified that he did not have any weapons or guns with him when he escaped or when he turned himself in, and that no death or serious bodily injuries occurred.

On cross examination, the movant conceded that his girlfriend had visited him on other occasions, and acknowledged that it was probably against the rules set by the Department of Corrections to have visitors while he was on work release.  He explained that he had also called Ms. Slaughter a few days after his escape, to determine if he'd get less time if he turned himself in immediately, but she did not know, so he remained at large until he called her several months later.

The movant introduced documents from the state court file for his 1989 escape conviction[4]. The affidavit accompanying the information in that case states:

> On July 7, 1989, the Dade Work Camp was notified by work supervisor Larry Folkes that inmate Robby Eugene Hogan was absent from his assigned work squad at Pennekamp State Park. A complete search of the area was conducted with negative results and escape procedures were initiated with all outbound park traffic monitored. As of July 27, 1989, the defendant has still not been apprehended.

---

[4] The movant was convicted in that case under the alias of Robby Eugene Hogan.

> On July 11, 1989, Robby Eugene Hogan contacted CPO I.S. Slaughter in regard to his current escape status. Mr. Hogan inquired as to what sentence he could receive if he was caught versus the time he would serve if he turned himself in. Ms. Slaughter told Mr. Hogan that she would be at Miami Dade Community College gym that evening if he wished to talk further. Mr. Hogan implied that he would meet her there. Surveillance teams were dispatched and stood on alert until 7:30 p.m. when it was determined that Mr. Hogan would be a no show.

He also submitted the arrest affidavit which was generated upon the movant's return to custody read only that the defendant was arrested on a warrant, said nothing about any struggle, and indicated that no weapon was seized.  Finally, the state sentencing guidelines score sheet prepared for the escape charge noted that no victim injury resulted from the offense.

After careful consideration of the testimony of the movant and close observation of his demeanor, and, taking into account his interest in the outcome of this proceeding, the Court credits the movant's testimony about the circumstances surrounding his prior escape conviction.

First, his testimony is supported by both common sense and the underlying state court record. His testimony that no weapon or gun was used, and that no injuries occurred is logical given the circumstances surrounding the offense, and is buttressed by the state court documentation which indicates that no weapons or injuries were involved in either the escape from the park, or the movant's subsequent return to custody.  Second, there is nothing present in the record, or presented by the government to rebut his testimony. Moreover, it should be noted that during the original sentencing hearing, counsel made an identical proffer, that the

16

escape was a walk-away from work release, and this proffer was not challenged.

Having found the movant credible, the undersigned finds, based on his testimony and the supporting state court documentation that the movant has satisfied his burden of establishing by clear and convincing evidence that no weapons or guns were used or threatened to be used, and no injuries or death occurred in the commission of his escape[5].

(b) <u>Whether the District Court would have agreed</u>

The government asserts that regardless of what the movant was able to prove in this hearing, there is no reasonable likelihood that counsel could have successfully argued this issue before the District Court during the sentencing hearing. The government contends that trial counsel likely would not have been able to obtain the records from state court in time for the hearing, and that the District Court would not have believed the movant's testimony.

Neither argument is persuasive. First, there was no testimony or evidence introduced during the evidentiary hearing to suggest that the state court records were not available. On the contrary,

---

[5] The government argues that escape is a continuing offense, and asserts that the movant has not established that no guns or weapons were used and no deaths or serious bodily injuries occurred during the entire length of time he was out of prison. However, under Florida Law, the offense of escape was completed when the movant absconded from the park. <u>See</u>, <u>Gaskin v. State</u>, 869 So.2d 646 (Fla. 3 DCA 2004)(finding that in a prosecution for burglary with intent to escape, it was legally impossible for the defendant to have intended to commit underlying offense of escape by entering or remaining in building; escape was complete as matter of law prior to defendant's alleged entry of building when he broke away from correction officers). Moreover, the movant was not charged with the commission of any other offenses during the time he remained a fugitive.

the movant testified that his wife obtained the certified and non-certified copies from the clerk's office. Although the PSI stated at the time that the factual circumstances surrounding the offense were not available, and Abraham testified that his wife encountered a delay in receiving them, as they were in transit from one Court to another, she was able to obtain them on the movant's behalf. Moreover, had trial counsel encountered difficulty, he would have had a good faith basis to request a continuance of the sentencing hearing.

With regard to the movant's credibility, the government argues that the Court noted during sentencing that it believed the movant had perjured himself during the course of the trial, and therefore would not have believed the movant had he testified about the facts during the sentencing hearing. Accordingly, the government asserts that the Court would have ruled that he failed to meet his burden under the affirmative defense provision, and imposed the three strike enhancement.

While mindful of the fact that the District Court did indicate during the sentencing hearing that he found the movant's trial testimony to be less than truthful, the undersigned nonetheless finds that there is a reasonable probability that the Court would have credited the movant's testimony regarding the circumstances surrounding his prior escape. During the sentencing hearing, the Court accepted the defense's proffer as true, but felt that §3559(c)(2)(f)(ii) mandated a life sentence, regardless of the circumstances of the prior escape conviction. Based on the undersigned's reading of the sentencing transcript, had counsel made the appropriate argument regarding the affirmative defense provision of §3559(c)(3)(A)(I) and presented the Court with the movant's testimony as well as the supporting documentation, there

is a reasonable probability that it would not have sentenced the movant under the three strikes provision based on the walk-away escape.

### (3) Conclusion

Because the undersigned finds that counsel was ineffective for failing to properly argue that the movant's prior escape conviction should be disqualified under §3559(c)(3)(A)(I), it is respectfully recommended that the motion to vacate be granted with respect to that claim, and resentencing be held.

### B. Remaining Claims

### (1) Claim One

In his **first claim**, Abraham asserts that counsel was ineffective for failing to argue that the forcible assault was a lesser included offense of the kidnapping offense, and that the convictions therefore violated double jeopardy.

In this case, although the two predicate convictions arose from the same course of conduct, each of the movant's convictions required proof of an unlawfully that the other did not. Generally, multiple convictions for the same course of conduct will not violate the Double Jeopardy Clause if each of the two offenses charged "requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932); United States v. Howard, 918 F.2d 1529, 1532-33 (11 Cir. 1990).

To support a conviction under section 924(c), the jury had to find Abraham guilty of committing the predicate "crime of

violence." See <u>Deal v. United States</u>, 508 U.S. 129, 132 (1993). To find the movant guilty of forcible assault, the jury was required to find that Abraham willfully threatened or attempted to inflict bodily injury upon the mail carrier. To find him guilty of kidnapping, the jury was required to find that Abraham (1) unlawfully seized confined, inveigled, decoyed, kidnapped, abducted, or carried away, and (2) held for ransom the mail carrier. Because each conviction required proof of separate elements, his two convictions on the predicate convictions, and his two §924(c) convictions did not violate the Double Jeopardy Clause. <u>See</u>, <u>Blockburger</u>, 284 U.S. at 304.

Abraham also argues that counsel was ineffective for failing to argue that his consecutive sentences on his §924(c) conviction were unlawful because the predicate crimes of violence arose from virtually identical conduct.

With regard to multiple convictions under §924(c), in <u>United States v. Rahim</u>, 431 F.3d 753 (11 Cir. 2005), the Court of Appeals held that consecutive terms of imprisonment are permitted when the predicate crimes of violence arise from the same course of conduct:

> ...Nothing in the language of §924(c) supports Rahim's view (that the statute does not permit two or more convictions under section 924(c) when the predicate crimes of violence arise from the same course of conduct); to the contrary, §924(c) makes it a crime to use, carry, or possess a firearm "during and in relation to any crime of violence ····." Id. § 924(c)(1)(A) (emphasis added). Section **924(c) has no language limiting its reach to offenses occurring in a separate "criminal transaction" or "course of conduct," and we cannot and will not read that requirement into the statute**.

The Court noted that the Third, Sixth, and Tenth Circuits have upheld multiple section 924(c) convictions where the same predicate crimes of violence, bank robbery and carjacking, occurred "virtually simultaneously," see, United States v. Casiano, 113 F.3d 420, 425 (3d Cir.1997); see also United States v. Burnette, 170 F.3d 567, 571-72 (6th Cir.1999); United States v. Romero, 122 F.3d 1334, 1343-44 (10th Cir.1997); and other courts have upheld multiple section 924(c) convictions involving different predicate crimes of violence that were part of a single course of conduct. See, e.g., United States v. Paladin, 401 F.3d 471, 478-79 (7th Cir.2005) (two drug distribution offenses); United States v. Salameh, 261 F.3d 271, 279 (2d Cir.2001)(conspiracy to bomb a building and assault on a federal officer); United States v. Andrews, 75 F.3d 552, 557-58 (9th Cir.1996)(murder and attempted manslaughter); United States v. Privette, 947 F.2d 1259, 1262 (5th Cir.1991) (two drug trafficking offenses).

However, in deciding Rahim, the Court determined that it need not reach the issue whether predicate offenses consisting of "virtually the same conduct" can support multiple 924(c) convictions, noting that the few courts to have reversed multiple convictions under section 924(c) have done so on cases wherein the "simultaneous predicate offenses consist[ed] of virtually the same conduct." Rahim, 431 F.3d at 758(citing, United States v. Finley, 245 F.3d 199, 206-08 (2d Cir.2001) (drug possession and drug distribution arising from a single drug transaction); see also, United States v. Wilson, 160 F.3d 732, 748-50 (D.C.Cir. 1998)(first degree murder and killing a witness to prevent him from testifying arising from a single homicide); United States v. Johnson, 25 F.3d 1335, 1336-39 (6th Cir.1994)(simultaneous possession of different controlled substances).

Abraham argues that in this case his predicate offenses, the kidnapping and assault of the postal worker, consisted of virtually the same conduct, against the same victim, and that as the Fifth Circuit held in United States v. Phipps, 319 F.3d 177 (5 Cir. 2003), the consecutive sentences were therefore improper as the single use of the firearm allowed the defendant to commit the two crimes. The government conceded that this claim might merit relief in some circuits, but argued that because the Eleventh Circuit has not yet ruled on this precise issue, counsel was not ineffective for failing to raise it.

Because the law on this precise issue has not been established in the Eleventh Circuit, Abraham cannot demonstrate that he was prejudiced by counsel's failure to raise it either at sentencing, or on appeal. However, it does appear to be a claim certainly worth raising, and because it is recommended that the movant be resentenced, counsel may make the argument at that time.

### (2) Claim Three

In his **third** claim, Abraham argues that he is actually innocent of the sentence enhancement because his escape conviction did not involve any guns or weapons, the threat of any guns or weapons, and no death or injuries resulted therefrom. Because it is recommended that the motion be granted with regard to the movant's related claim asserting ineffective assistance of counsel for failing to make this argument at trial, this claim is moot.

### (3) Claim Four

In his **fourth claim**, the movant asserts that he received ineffective assistance of appellate counsel. Abraham argues that

22

counsel was ineffective for failing to make all of the arguments above to the Eleventh Circuit.

The standard for a claim of ineffective assistance on direct appeal is the same as that for ineffective assistance at trial. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). That is, as required by <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the petitioner must establish that 1) his counsel's representation fell below an objective standard of reasonableness, and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different.

Although the undersigned has determined that the movant's §3559(c) claim is meritorious, and his §924(c) claim was a colorable claim, because neither was raised and preserved at trial, it cannot be said that there is a reasonable probability that either would have succeeded on appeal. Moreover, because it is recommended that the judgement be vacated for resentencing, counsel will have the opportunity to raise the claims at resentencing, and then, if necessary, on appeal.

## V. <u>Conclusion</u>

It is therefore recommended that the motion to vacate be granted with respect to the movant's claim that counsel was ineffective for failing to argue that the prior escape conviction was a non-qualifying felony under §3559(c)(3)(A)(I). The remaining claims are either denied, or dismissed as moot, without prejudice to raise at the resentencing.

23

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 24th day of February, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Philip Horowitz, Esquire
     Attorney for Movant
     9130 S. Dadeland Boulevard
     Suite 1910
     Miami, FL 33156

     Bruce O. Brown, AUSA
     U.S. Attorney's Office
     500 East Broward Blvd., Suite 700
     Ft. Lauderdale, FL 33394